Diana Chang (Bar No. 287624)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:     (415) 439-1400
Facsimile:      (415) 439-1500

Brent P. Ray (*pro hac vice*)
Greg Polins (*pro hac vice* application to be filed)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

Barry F. Irwin, P.C. (*pro hac vice*)
Irwin IP LLC
1333 Burr Ridge Pkwy, Suite 200
Burr Ridge, Illinois 60527
Telephone:     (630) 756-3101
Facsimile:      (630) 756-3100

Attorneys for Defendants
WOWZA MEDIA SYSTEMS, LLC, and
COFFEE CUP PARTNERS, INC.
(f/k/a WOWZA MEDIA SYSTEMS, INC.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED, a Delaware Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>WOWZA MEDIA SYSTEMS, LLC, and COFFEE CUP PARTNERS, INC. (f/k/a WOWZA MEDIA SYSTEMS, INC.)<br><br>    Defendants. | CASE NO. 14-cv-02778-JST<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AND SECOND CLAIMS FOR RELIEF; MOTION TO DISMISS ALL CLAIMS AGAINST COFFEE CUP PARTNERS, INC.**<br><br>Judge:          Honorable Jon S. Tigar<br>Courtroom:   9 (19th Floor)<br>Date:            September 11, 2014<br>Time:           2:00 PM |

# TABLE OF CONTENTS

**PAGE**

**I.      INTRODUCTION** .................................................................................................... 1

**II.     LEGAL STANDARDS** ........................................................................................... 4

**III.    ARGUMENT** .......................................................................................................... 4

      **A.**   Counts I and II of *Wowza II* Represents an Impermissible
           Collateral Attack on the Court's Order ................................................................ 4

      **B.**   Counts I and II in *Wowza II* Should Also Be Barred by the
           Prohibition on Claim Splitting ............................................................................. 6

      **C.**   Allowing Adobe to Pursue Counts I and II Would Also Violate the
           *Kessler* Doctrine .................................................................................................. 9

      **D.**   Versions of WMS After WMS 3.0 Are at Issue in *Wowza I* ............................... 10

      **E.**   All Claims as to Coffee Cup Partners, Inc Should Be Dismissed ....................... 14

**IV.    CONCLUSION** ..................................................................................................... 15

**TABLE OF AUTHORITIES**

**PAGE(S)**

*Acumed LLC v. Stryker Corp.*,
   525 F.3d 1319 (Fed. Cir. 2008) ................................................................................................ 7

*Adobe Systems Inc. v. Wowza Media Systems, LLC.*,
   Case No. CV-11-02243-JST ("*Wowza I*") ...................................................................... passim

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................. 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................. 4

*Biogenex Labs., Inc. v. Ventana Med. Sys., Inc.*,
   No. C-05-860, 2005 WL 1869342 (N.D. Cal. August 5, 2005) ........................................... 3, 8

*Brain Life, LLC v. Elekta Inc.*,
   746 F.3d 1045 (Fed. Cir. 2014) ......................................................................................... passim

*Cent. Delta Water Agency v. United States*,
   306 F.3d 938 (9th Cir. 2002) .................................................................................................... 7

*Creative Internet Advertising Corp. v. Yahoo! Inc.*,
   674 F.Supp.2d 847 (E.D. Tex. 2009) ....................................................................................... 7

*Glitsch, Inc. v. Koch Eng'g Co.*,
   216 F.3d 1382 (Fed. Cir. 2000) ................................................................................................ 6

*Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.*,
   296 F.3d 982 (10th Cir. 2002) .................................................................................................. 9

*I/P Engine, Inc. v. AOL Inc.*,
   N. CV-11-512, 2014 WL 243157 (E.D. Va. Jan. 21, 2014) .................................................... 8

*Icon-IP Pty, Ltd. v. Specialized Bicycle Components, Inc.*,
   Case No. CV-13-3677-JST (N.D. Cal. Oct. 22, 2013) ............................................................ 6

*Mack v. Kuckenmeister*,
   619 F.3d 1010 (9th Cir. 2010) .................................................................................................. 4

*Single Chip Sys. Corp. v. Intermec IP Corp.*,
   495 F. Supp. 2d 1052 (S.D. Cal. 2007) .................................................................................... 7

*SpeedTrack, Inc. v. Office Depot, Inc.*,
   No. 07-3602, 2014 WL 1813292 (N.D. Cal., May 6, 2014) ............................................ 2, 8, 9

*Tivo, Inc v. EchoStar Corp.*,
   646 F.3d 869 (Fed. Cir. 2011) .................................................................................................. 7

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
   971 F.2d 244 (9th Cir. 1992) .................................................................................................... 4

**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 4
Fed. R. Civ. P. 26(e) ................................................................................................................... 13

Defendants Wowza Media Systems, LLC. and Coffee Cup Partners, Inc. (f/ka/ Wowza Media Systems, Inc.) hereby notices this Motion to Dismiss for hearing on September 11, 2014 at 2 PM.

Defendants ask this Court to dismiss Counts I and II of Plaintiff's complaint against all parties. Wowza additionally asks this Court to dismiss all Counts of Plaintiff's complaint against Coffee Cup Partners, Inc.

## I.     INTRODUCTION

In this lawsuit, Plaintiff Adobe Systems Incorporated ("Adobe") seeks to: (1) circumvent this Court's ruling in *Adobe Systems Inc. v. Wowza Media Systems, LLC.*, Case No. CV-11-02243-JST ("*Wowza I*") that precluded Adobe from asserting that Wowza's[1] support of the so-called RTMP Enhanced protocol infringed U.S. Patent Nos. 7,961,878 ("'878 patent") and 8,051,287 ("'287 patent");[2] and (2) re-litigate the exact same infringement claims currently being litigated in *Wowza I* as to Wowza's support of the RTMPe protocol. The filing of this second lawsuit ("*Wowza II")* is an impermissible collateral attack on this Court's Order, and violates the claim splitting and *Kessler* doctrines.

In *Wowza I*, Adobe originally asserted that Wowza infringed U.S. Patent Nos. 7,272,658 ("'658 patent") and 7,587,509 ("'509 patent") through its support of the RTMP and RTMPe protocols. *Wowza I,* Dkt. No. 1. In its first and second amended complaints, Adobe added assertions that Wowza's support of the RTMPe protocol infringed the '878 and '287 patents. *Id.* at Dkt. Nos. 15 and 32. After fact discovery closed in *Wowza I*, Adobe's infringement expert improperly set forth a new theory of infringement in his expert report—namely, that Wowza's support of the so-called RTMP Enhanced protocol also infringed the '878 and '287 patents.

---

[1] Throughout this brief, "Wowza" refers to Wowza Media Systems, LLC and "WMS" refers to the software, Wowza Media Server, now known as Wowza Streaming Engine.

[2] *See Wowza I*, Dkt. No. 442 (hereinafter "Order") at 24-27.

1  Order at 26-27. This Court precluded Adobe from asserting infringement based upon this new theory. *Id.* Adobe thereafter filed a motion for reconsideration of this Court's Order, which was denied. *See Wowza I*, Dkt. No. 456. Adobe only filed this suit after its motion for reconsideration failed.

In this new suit, Adobe accuses Wowza of infringing the '878 and '287 patents through support of the H.264 handshake. *See* Dkt. 1 at ¶¶ 30, 33, 38, 41; Dkt. 21 at 11. This is the same RTMP Enhanced handshake that Adobe was precluded from asserting in *Wowza I*. Order at 25-27. Adobe is free to appeal this Court's ruling in *Wowza I*, but Adobe cannot collaterally attack the ruling by simply filing a new lawsuit seeking to circumvent the Court's Order. Indeed, consolidation of *Wowza I* and *Wowza II* (as presently constituted and if permitted to proceed) would reverse this Court's Order precluding Adobe from asserting that Wowza's support of RTMP Enhanced functionality infringed the '878 and '287 patents.

Counts I and II of this second lawsuit are likewise barred by the well-established prohibition against claim splitting. This doctrine explicitly (i) requires a plaintiff to raise all grounds for recovery that can be brought together in a single lawsuit, and (ii) precludes a party from asserting claims of patent infringement in a new action when the patentee previously asserted the same claim, or was precluded from asserting those claims in a prior action, as to any product that is the same, or essentially the same, as the products at issue in the prior litigation. *See Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045 (Fed. Cir. 2014) (finding infringement claim asserted against product that was "essentially the same" as the product in prior suit was barred by claim preclusion); *SpeedTrack, Inc. v. Office Depot, Inc.*, No. 07-3602, 2014 WL 1813292, at *5-9 (N.D. Cal., May 6, 2014) (finding infringement claim based upon the doctrine of equivalents asserted against product that was "essentially the same" as the product in prior suit barred by claim preclusion, even though patentee was precluded from asserting claim based upon doctrine

of equivalents in earlier case); *Biogenex Labs., Inc. v. Ventana Med. Sys., Inc.*, No. C-05-860, 2005 WL 1869342 (N.D. Cal. August 5, 2005) (barring patentee from bringing second action based upon a specific patent claim patentee had not originally asserted, and was subsequently precluded from asserting, in first action). In *Wowza I*, Adobe's claims for infringement of the '878 and '287 patents based upon Wowza's support of the RTMPe handshake are directly at issue. Additionally, in *Wowza I,* this Court excluded Adobe's claims for infringement of the '878 and '287 patents based upon Wowza's support of the RTMP Enhanced handshake. Adobe cannot reassert those same claims in *Wowza II,* as it seeks to do.

Counts I and II of *Wowza II* are also be barred by the *Kessler* Doctrine, which bars an infringement suit against a product, and those that are essentially the same, when the product was previously held to be non-infringing. *Wowza I* will resolve the issue of whether Wowza's support of the RTMPe functionality in Wowza Media Server ("WMS") infringes the '878 and '287 patents. Similarly, in *Wowza I*, the Court precluded Adobe from alleging infringement of the '878 and '287 patent based upon Wowza's support of RTMP Enhanced functionality. Allowing Adobe's '878 and '287 patent claims to proceed in *Wowza II* as to products that are the same as, or essentially the same as, the products at issue in *Wowza I* (which is the case here) violates the *Kessler* Doctrine.

Adobe cannot circumvent this Court's Order, as well as the claim splitting and *Kessler* doctrines, by asserting that *Wowza I* involved only versions of the WMS before 3.1, whereas *Wowza II* involves versions of WMS after 3.1. See Dkt. 1 at ¶ 19. Even if *Wowza I* involved only products before WMS 3.1, Counts I and II of *Wowza II* are still barred under the collateral attack, claim splitting and *Kessler* doctrines. Any distinction between the products allegedly at issue in *Wowza I* and *Wowza II* is immaterial to the infringement analysis and, therefore, immaterial to the collateral attack, claim splitting and *Kessler* doctrines. Indeed, Adobe admitted

there is no difference between the products at issue in *Wowza I* and *Wowza II* in terms of the allegedly infringing functionality. And, until it suited its purposes, Adobe litigated *Wowza I* as if all versions of WMS made available by Wowza were at issue in *Wowza I*. Adobe should be estopped from taking the contrary position now.

Finally, all claims asserted against Coffee Cup Partners should be dismissed. Coffee Cup Partners is the new name for Wowza, Inc., which transferred all of its assets to Wowza LLC on March 27, 2012. Coffee Cup Partners therefore stopped acting as an operating entity on March 27, 2012. All claims asserted by Adobe in *Wowza II,* however, arose **after** March 27, 2012. Adobe therefore has no basis to allege, and indeed did not allege, that Coffee Cup Partners made, used, sold or offered for sale WMS 3.1, or any other product after the issuance of the other four patents in suit.

## II.         LEGAL STANDARDS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court should dismiss a claim if the pleadings do not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *see also Mack v. Kuckenmeister*, 619 F.3d 1010, 1014 n.1 (9th Cir. 2010). Therefore, this Court may properly take judicial notice of Adobe's contentions made in the filings in *Wowza I*.

## III.        ARGUMENT

### A.    Counts I and II of *Wowza II* Represents an Impermissible Collateral Attack on the Court's Order

In *Wowza I*, Adobe's '878/'287 infringement claims are limited to RTMPe after the Court's

Order striking Adobe's RTMP Enhanced theory of infringement, and denying Adobe's motion for reconsideration. *Wowza I*, Dkt. 456. As shown below, applying the claim splitting and *Kessler* doctrines, this infringement determination will be binding as to the products at issue in *Wowza I* and all products that are essentially the same (including versions of WMS after 3.0). In other words, if Wowza establishes, in *Wowza I*, that WMS does not infringe the '878 and '287 patents, that determination is binding upon Adobe for the products at issue in *Wowza I* and all products that are essentially the same. Adobe filed this action in a misguided effort to avoid that result and circumvent the impact of the Order.

In this lawsuit, Adobe asserts the same claims the Court precluded Adobe from asserting in *Wowza I* against the same, or essentially the same products. This constitutes an impermissible collateral attack on the Court's Order. Furthermore, *Wowza I* and *Wowza II* involve the same parties, two of the same patents (the '878 and '287 patents), the same product (WMS), and the same functionality (RTMPe). These cases are now related, *see* Dkt. 11, and if Counts I and II are not dismissed, either *Wowza I* is thrown into disarray or the parties end up litigating the same issues in two separate cases.³ Either way, this Court's Order precluding Adobe from asserting that Wowza's support of RTMP Enhanced functionality infringed the '878 and '287 patents is essentially reversed.

The Federal Circuit found there was a "strong and sensible policy" against a similar type of collateral attack, and prevented a defendant from asserting defenses in a second case after the Court precluded the defendant from asserting them in the first case. *Glitsch, Inc. v. Koch Eng'g Co.*, 216 F.3d 1382, 1384 (Fed. Cir. 2000). In doing so, the Federal Circuit noted:

> When a court enters an order that a party does not like, the party's recourse is to

---

³ As one example of the confusion already caused by *Wowza II*, Adobe asserted that "consolidation of issues raised in *Wowza II* into *Wowza I* as may be ordered by the Court may result in the need for further supplementation of the Parties' expert reports in *Wowza I* …" See *Wowza I*, Dkt. No. 462 at 10, ll. 10-12.

>seek relief on appeal; it is not appropriate for the party to contest the court's order by filing a new action … challenging the court's ruling in the first case.

*Id* at 1384. Likewise, in *Icon-IP Pty, Ltd. v. Specialized Bicycle Components, Inc.*, Case No. CV-13-3677-JST (N.D. Cal. Oct. 22, 2013), Dkt. 24, this Court dismissed a second lawsuit that asserted claims that the Court precluded the patentee from asserting in an earlier action. In *Icon-IP,* this Court denied a patentee's motion to amend its infringement contentions to assert infringement as to new products. *Id.* at 4. The patentee then filed a second action asserting infringement as to those same products. *Id.* This Court dismissed the second action reasoning that if the second action was allowed to proceed, the Court would have to consolidate the two actions in the interest of judicial economy, and the Court's prior court order would be negated and essentially reversed. *Id.* As such, this court barred the second complaint as an impermissible collateral attack.

Here, Adobe never bothered to seek leave to amend, but simply asserted infringement in its expert's report (as to all versions of Wowza through version 3.5) based upon its new RTMP Enhanced theory. *See* Order at 27. The Court struck this theory. *Id*. The products embraced by a final judgment in *Wowza I* would include not just versions prior to 3.1, but all subsequent versions of Wowza that are substantially the same. *See Brain Life*, 746 F.3d at 1045 (finding claim preclusion bars claims as to products that existed before final judgment and are "essentially the same" as the accused device, and finding the *Kessler* doctrine barred claims of infringement after final judgment as to those same products). To allow Adobe's infringement theory in *Wowza II*—that engaging in the RTMP Enhanced handshake infringes the '878 and '287 patents—would negate and essentially reverse this Court's Order in *Wowza I*. As such, just like in *Icon-IP*, Adobe's claims should be barred as an impermissible collateral attack.

> **B. Counts I and II in *Wowza II* Should Also Be Barred by the Prohibition on Claim Splitting**

The doctrine of claim preclusion bars a second action where "(1) the same parties, or their

privies, were involved in the prior litigation, (2) the prior litigation involved the same claim or cause of action as the later suit, and (3) the prior litigation was terminated by a final judgment on the merits." *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002). Like claim preclusion, the doctrine of claim splitting bars reasserting previously asserted claims even if there has been no final judgment in the prior litigation in which the claim was asserted. The doctrine of claim splitting applies the same test as the claim preclusion doctrine, but assumes that the first suit was finally decided. *See Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1059 (S.D. Cal. 2007) (barring patentee in a second action from asserting the same claims that the patentee was precluded from pursuing in an amended complaint).

Here, the first element of the claim splitting test is met because the parties are currently identical in both actions. And, even if Coffee Cup Partners is dismissed, Adobe and Wowza, LLC. are both parties in *Wowza I*.

The second element of the claim splitting test is satisfied if "the accused device in the action before the court is 'essentially the same' as the accused device in a prior action …." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008) (citation omitted); *see also Brain Life,* 746 F.3d at 1053; *Icon,* Dkt. No. 24 at 4:13-16. Devices are essentially the same "where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" *Id.* (citations omitted).[4] Assuming the product is the same or essentially the same, the second element is met even if the patentee was preluded in the first suit from pursuing a

---

[4] This same colorably different test also applies when the patentee seeks to include new products in post-judgment matters in a case determined based upon prior versions of the product. *See Tivo, Inc v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011) (*en banc*) (new product encompassed by injunction when the new infringing product is not more than colorably different from the product involved in the prior litigation); *see also Creative Internet Advertising Corp. v. Yahoo! Inc.*, 674 F.Supp.2d 847, 858 (E.D. Tex. 2009) (sales of new versions of software properly included in ongoing royalty analysis when not colorably different); *see also I/P Engine, Inc. v. AOL Inc.*, N. CV-11-512, 2014 WL 243157 (E.D. Va. Jan. 21, 2014) (new allegedly changed version of AOL properly included in post-verdict relief analysis as it was not colorably different).

specific theory of infringement. *See SpeedTrack*, 2014 WL 1813292, at *5 (finding claim based upon doctrine of equivalents barred by claim preclusion when patentee was precluded from asserting claim based upon doctrine of equivalents in earlier case); *see Biogenex Labs.*, 2005 WL 1869342, at *3-4 (barring patentee from bringing second action based upon infringement claim it was precluded from asserting in first action). Bifurcating allegations of infringement by time does not avoid application of the claim preclusion doctrine either. *SpeedTrack*, 2014 WL 1813292, at *5. In *SpeedTrack*, the Court rejected the patentee's argument that the first case was limited to infringement that took place before the case:

> SpeedTrack has not shown why the court should afford any significance to the date of the filing of its claims against Endeca. The *Brian Life* court was clear in holding that the only significant date, for *res* judicata purposes, is the date of final judgment in the earlier case … Even though SpeedTrack may have chosen not to assert claims of ongoing infringement against Endeca and Wal-Mart for any alleged acts occurring after May 25, 2007, it could have asserted such claims (at least through the date of final judgment), and as a result, it may still be barred from asserting them now …

*Id.* at *4.

Even if *Wowza I* is limited to WMS 3.0 and earlier, the products at issue in *Wowza I* and *Wowza II* meet the "essentially the same" standard. The same functionality being asserted as infringing the '878 and '287 patents in *Wowza* I has been included in subsequent versions of WMS. *See* Ex. A,[5] Decl. of C. Good at ¶¶ 3-5; *see also id.* at ¶¶ 10-13 (explaining how Wowza designate versions of WMS). Indeed, Adobe admitted the "accused functionality did not change in relevant part after WMS 3.1." *See, e.g.* Ex. B, Expert Report of P. Alexander on Infringement at ¶¶ 267-268, 271-272 and 274-275 (accusing WMS Versions 1.5 through 3.5 of infringing the '878 and '287 patents); *see also id.* at Appendix A-3 at 1 and A-4 at 1) (confirming analysis of WMS 3.0 code applied to versions of WMS through 3.5). Further, the RTMPe and so-called

---

[5] Throughout this brief, unless otherwise noted all citations to exhibits refer to exhibits attached to the concurrently filed Declaration of Barry Irwin in Support of Wowza's Motion to Dismiss.

RTMP Enhanced functionality that Adobe asserts as infringing the '878 and '287 patents in this case existed in the identical or virtually identical fashion in versions of Wowza before 3.1 (allegedly at issue in *Wowza I*) and in versions of WMS after 3.1 (allegedly at issue in *Wowza II*). *See* Ex. A, Decl. of C. Good at ¶ 3-5. Thus, this Court should find Counts I and II in *Wowza II* are barred by the prohibition on claim splitting.

      **C.**      **Allowing Adobe to Pursue Counts I and II Would Also Violate the *Kessler* Doctrine**

The *Kessler* Doctrine allows "an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." *Brain Life*, 746 F.3d at 1056 (emphasis in original). For purposes of determining whether the *Kessler* doctrine is violated, as is done in the claim splitting analysis, the Court should presume that a final judgment has been reached in *Wowza I*. In *Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.*, 296 F.3d 982, n.1 (10th Cir. 2002), the Court stated that the basis for not requiring a final judgment in the claim preclusion analysis is that *res judicata* is an affirmative defense that must be raised at the outset of a matter. The *Kessler* doctrine also creates an affirmative defense that must be asserted at the outset of the litigation. As such, when analyzing the *Kessler* doctrine, this Court should presume that *Wowza I* has determined that WMS does not infringe the '878 and '287 patents

The Federal Circuit recently affirmed that the *Kessler* doctrine bars all subsequent assertions of the same patent against the same product, or products that are essentially the same as the prior product. *Brain Life,* 746 F.3d at 1057; *see also SpeedTrack,* 2014 WL 1813292, at *7-9. Allowing Adobe's assertion of the '878 and '287 patent claims to proceed in *Wowza II* as to products that are the same as, or essentially the same as, the products at issue in *Wowza I* violates the *Kessler* Doctrine. Again, as explained above, even assuming *Wowza I* was limited to versions of WMS prior to 3.1, WMS version 3.1 and subsequent versions have all been

essentially identical to prior versions of WMS in regards to the allegedly infringing technology. As such, the *Kessler* doctrine precludes Adobe's claims of infringement of the '878 and '297 patents, even claims based upon previously unasserted theories. *Id.*

### D. Versions of WMS After WMS 3.0 Are at Issue in *Wowza I*

Based upon statements made by Adobe at the June 18, 2014 *Wowza I* Joint Case Management Conference, and the Joint Case Management Conference Report submitted thereafter, *Wowza I*, Dkt. No. 462 at 5-6, Adobe apparently intends to assert that Counts I and II of *Wowza II* are not barred because they are asserted only as to versions of WMS after 3.0, which are allegedly not part of *Wowza I*. *See e.g.* Dkt. 21 at 11.[6] As shown above, Wowza's motion to dismiss Counts I and II does not hinge upon whether versions of WMS after version 3.0 were at issue in *Wowza I*.

To be clear, however, both Adobe and Wowza always understood that versions of WMS after 3.0 were at issue in *Wowza I*. Indeed, in Adobe's summary judgment opposition, Adobe succinctly stated "Adobe has asserted claim 1 of the '878 patent against the WMS 3.5 Base, as address separately, infra Section IV.B.3." *See Wowza I*, Dkt. No. 355 (Adobe's Summary Judgment Opposition) at 35, n. 36. Further evidence that Adobe understood versions of WMS after 3.0 were at issue in *Wowza I* can be found in: (1) Adobe's requests for source code,

---

[6] Adobe apparently relies upon a footnote of the Court's Order wherein the Court stated that "all dot versions of WMS 3.0" did not include versions such as 3.1 and its dot versions, 3.2 and its dot versions, etc." *See* Order at 31, n. 10. However, the Court did not say versions such as 3.1 and its dot versions, and 3.2 and its dot versions were not part of *Wowza I*, as Adobe contends, but only that they were not included within "3.0 and its dot versions." Further, the Court's comment was made in the context of Wowza's motion for summary judgment that versions of WMS after 3.0.3, patch 12 did not infringe the '658 and '509 patents as the so-called new-time chunk was removed in WMS Version 3.0.3 patch 12. Adobe opposed Wowza's summary judgment motion as those iterations of WMS after 3.0.3 patch 12 on the basis that it allegedly never asserted that versions 3.0.3 patch 12, or later, infringed the '658 and '509 patents. The Court rejected that argument finding that Adobe did assert infringement as to all 3.0 versions. Nevertheless, the Court did not separately address infringement by versions 3.0.3 patch 12 and later, and found instead that Adobe had not introduced evidence from which a reasonable jury could conclude that WMS (before and after 3.0.3, patch 12) met the new stream or new media chunk limitations, either literally or under the doctrine of equivalents. *See* Order at 35.

documents, sales data, and technical information concerning versions of WMS after 3.0; (2) Wowza's production of source code, documents, sales data, and technical information concerning versions of WMS after 3.0; (3) Adobe's experts' examination of versions of WMS after 3.0 and specific allegations that versions of Wowza up to WMS 3.5 infringed the '878 and '287 patents; and (4) Adobe's expert's inclusion of versions of WMS after 3.0 in the alleged damages calculation.

*First*, in *Wowza I*, Adobe requested source code and documents regarding versions of WMS after 3.0. Throughout discovery, Adobe used the following definitions of the "accused products," or Wowza Media Server, to request documents and information:

- "*all versions* of Wowza Media Server, including any updates to Wowza Media Server that have been developed or distributed." (*See e.g.* Ex. C, Adobe's First Set of Requests for Production at 2; Ex. D, Adobe's First Set of Interrogatories at 2; Ex. E, Adobe's First Set of Requests for Production of Expert Documents at 2.)

- "*all versions* of Wowza Media Server or any other Wowza product or technology, made, used, sold, or offered for sale on or after September 18, 2007 and that include implementations of RTMP or RTMPE." (*See* Ex. F, Adobe's Second Set of Interrogatories at 2; Ex. G, Adobe's Second Set of Requests for Production at 2.)

- "*all versions* of the Wowza Media Server product … provided by Wowza." (*See* Ex. H, Adobe's Third Set of Requests for Production at 2; Ex. I, Adobe's Fourth Set of Requests for Production at 2.)

In addition, Adobe specifically requested "[a]ll source code for all prototypes and *all versions* of Wowza Media Server that implement RTMP and/or RTMPe" and "[a]ll version control source code for *all prototypes and versions* of Wowza Media Server that implement RTMP and/or RTMPe." (Ex. H, Adobe's Third Set of Requests For Production at 7.)

Wowza released WMS 3.1 on April 10, 2012 and released WMS 3.5 on November 8, 2012. (Ex. A, Decl. of C. Good at ¶ 14-15; Ex. J, WMS Release Notes.) Discovery in *Wowza I* closed on December 14, 2012. (*See* Dkt. 161.) Not only did Wowza have a continual obligation to comply with Adobe's discovery requests for new versions of WMS, including WMS 3.1 and 3.5, *see* Fed. R. Civ. P. 26(e), Adobe served its Third and Fourth Request for Production, and its First

Set of Requests for Production of Expert Documents *after* Wowza released WMS 3.1. (*See* Ex. H (May 18, 2012); Ex. I (November 14, 2012); and Ex. E (January 14, 2013).) Thus Adobe plainly requested documents and information about versions of WMS after 3.1 in *Wowza I*.

Adobe went so far as to complain that "Wowza has not yet supplemented its document production with regard to WMS 3.5 . . . ," and demanded a meet-and-confer to ensure Adobe obtained documents related to WMS 3.5. (Ex. K, Dec. 2, 2012 E-Mail from R. Hatch to B. Irwin at 2; Ex. L, Dec. 5, 2012 E-Mail from R. Hatch to B. Irwin at 5.) In response, Wowza complied with Adobe's demands for documents regarding WMS 3.5, as detailed below.

***Second***, in *Wowza I*, Wowza provided Adobe with source code, documents, sales figures, and technical information concerning versions of WMS after 3.0. As one example, Wowza provided Adobe with WMS 3.5 source code. (*See e.g.* Ex. M WMS 3.5 Source Code, WOWZA0308834-63.)[7] In addition, Wowza produced WMS 3.5 documentation, including WMS 3.5 user guides, quick start guides, and update guides, among other documents. (Ex. O, WMS 3.5 User Guide; Ex. P, WMS 3.5 Quick Start Guide; Ex. Q, WMS 3.5 Upgrade Guide.) Wowza also produced sales data for versions of WMS after 3.0, including profit and loss statements from March 2012 through October 2012. (Ex. R, Wowza Profit and Loss Statement from March 2012 through Oct. 2012.) Finally, Wowza responded to Adobe's interrogatories during discovery with information about WMS 3.5. (*E.g.* Ex. S, Wowza's Supplemental Response to Adobe's Second and Third Set of Interrogatories at 3) (explaining that "as of Wowza Media Server ***version 3.5***, released on November 8, 2012, [Wowza] no longer offers

---

[7] The source code provided as an exhibit is just one example of WMS 3.5 source code Wowza produced in *Wowza I*. On November 29, 2012, Wowza made WMS 3.5 code available for inspection. (Ex. K, E-Mail from R. Hatch at 2.) Adobe's experts and attorneys inspected the source code computer containing WMS 3.5 code starting on November 30, 2012. (Ex. N, Sign-in Sheet) (showing Adobe's counsel and expert accessed the source code review computer after WMS 3.5 source code was available.) Indeed, Adobe requested, and Wowza produced, WMS 3.5 source code files at least three separate times. (Decl. of B. Irwin at ¶ 23.)

RTMPe as a standard feature in WMS.") It is abundantly clear that Adobe requested, and was provided, with ample documents and information about versions of WMS after 3.0 in *Wowza I*.

*Third*, in *Wowza I*, Adobe's experts relied on the information Wowza provided about versions of WMS after 3.0 to allege infringement and calculate damages. Adobe's infringement expert, Dr. Alexander, alleged versions of WMS **through version 3.5** infringed claims of the '878 and '287 patents. (Ex. B, Alexander Rpt. at ¶¶ 271-272 ('878 patent), and ¶¶ 274-275 ('287 patent)). Adobe's expert explicitly acknowledged he reviewed WMS 3.5 code and document and found no relevant differences from WMS 3.0 code. (*See id* at A-3 at 1, and A-4 at 1) (stating "I have reviewed the code and documentation for other versions of WMS prior to 3.0.0, and for *WMS versions 3.0.4 and 3.5*, *and determined that the implementation follows my analysis for WMS version 3.0.0. Therefore this same analysis applies equally well to all versions referenced above.*") (emphasis added.)

*Fourth,* Adobe's damages expert, Dr. Bakewell, included a discussion of WMS 3.5 in his report, similar to Dr. Alexander. (Ex. T, Expert Report of Dr. Bakewell at ¶¶ 148-49, 180-181, 230). Not only did Dr. Bakewell discuss WMS 3.5, Dr. Bakewell included sales from versions of WMS after 3.0 in his calculation. (*Id.* at Exhibit 12.0.)[8] Thus in *Wowza I*, Adobe's experts utilized the requested documents and information concerning versions of WMS after 3.0 to allege infringement and calculate alleged damages.

For sure, Wowza moved to strike the infringement contention set forth for the first time in Dr. Alexander's Expert Report based upon the theory that WMS infringed the '878 and '287 patents through the use of the so-called RTMP Enhanced handshake. *Wowza I*, Dkt. No. 340 at

---

[8] In addition to Dr. Alexander and Dr. Bakewell, Dr. Jagannathan's report on RTMPe protection levels and the development and use of WMS similarly noted that he had reviewed the source code for WMS 3.5. (Ex. U, Dr. Jagannathan Rpt. at ¶ 64 ("the source code for WMS 3.5 that I reviewed …") and ¶ 119 ("The source code I have cited in this section is from WMS 3.0. Similar source code is also present in WMS versions such as 1.5.3, and 3.5.".))

1  30. Notably, Alexander's belated asserted contention was made as to all versions of Wowza
2  through 3.5. (Ex. B, Alexander Rpt. at ¶¶ 267-268 ('509 patent), ¶¶ 271-272 ('878 patent), and
3  ¶¶ 274-275 ('287 patent)). Wowza did not move to strike these assertions on the basis that they
4  encompassed versions beyond 3.0. Rather Wowza moved to strike the allegations because they
5  were based upon a new theory not previously made as to any version of WMS before 3.1 or after.
6
7  In short, in *Wowza I*, Adobe requested documents and information about versions of WMS
8  after 3.0, and Wowza provided Adobe with the requested documents and information. Adobe's
9  experts then relied on the requested documents and information to allege versions of WMS after
10 3.0 infringed the patents-in-suit and to calculate Adobe's alleged damages. This exchange of
11 information, coupled with the decisions regarding the summary judgment motions, shows there
12 is simply no question that WMS 3.1 and subsequent versions were at issue in *Wowza I*.
13
14 While it is not necessary for Wowza to show that versions of WMS after 3.0 were at issue in
15 *Wowza I* in order for this Court to grant Wowza's motion to dismiss as to any issue, the fact that
16 the same versions of WMS and the same functionality were at issue in *Wowza I* is further
17 grounds for granting Wowza's motion to dismiss. If Adobe's claims are allowed, Adobe will be
18 permitted to pursue the very claims that the Court stated it could not, demonstrating that *Wowza*
19 *II* is an improper collateral attack on the Court's Order. Further, the product at issue in *Wowza II*
20 is not just "essentially the same" as the product at issue in *Wowza* I, but the very same product,
21
22 demonstrating that the claim preclusion and Kessler doctrines unquestionably bar Adobe's
23 claims.

24  **E.     All Claims as to Coffee Cup Partners, Inc Should Be Dismissed**

25  Adobe's asserted claims as to Coffee Cup Partners, Inc ("Coffee Cup"), the successor to
26 Wowza Media Systems, Inc, should be dismissed by this Court because Coffee Cup transferred
27 all of its assets to Wowza LLC on March 27, 2012, rendering it a non-operating entity as of that
28

date. All of the claims in this case arose *after* March 27, 2012. Specifically, Counts I and II allege infringement only as to WMS version 3.1 and later version. However, WMS version 3.1 was not introduced until April 10, 2012. (*See* Ex. A, Decl. of C. Good at ¶ 14.) The remaining claims, Counts III-VI, allege infringement of patents that were issued after March 27, 2012, the first being issued on April 24, 2012. (*See* Dkt. 1 at ¶ 69.) There is no good faith basis to assert that Coffee Cup made, used, sold or offered for sale products after the dates these patents issued. Indeed, Adobe does not make any such assertion. As such, these claims should be dismissed as to Coffee Cup.

## IV.   CONCLUSION

Wowza respectfully requests that this Court follow its own precedent and dismiss Adobe's first two claims of relief in *Wowza II* because this second action represents a collateral attack on the Court's Order, violates the prohibition on claim-splitting, and violates the *Kessler* Doctrine. Wowza also requests the claims against Coffee Cup be dismissed because it was not an operating entity at the time WMS 3.1 was released or when the remaining patents were issued.

Dated:  July 17, 2014                                      Respectfully submitted,

                                                           KIRKLAND & ELLIS LLP
                                                              Brent P. Ray (*pro hac vice*)
                                                              Greg Polins (*pro hac vice* to be filed)
                                                              Diana Chang

                                                           Irwin IP LLC
                                                              Barry F. Irwin (*pro hac vice*)


                                                           By ____/s/    Barry F. Irwin_____


                                                           Attorneys for Defendant
                                                           WOWZA MEDIA SYSTEMS, INC.