UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED,<br><br>   Plaintiff,<br><br>   v.<br><br>WOWZA MEDIA SYSTEMS, LLC, et al.,<br><br>   Defendants. | Case No. 14-cv-02778-JST<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 24 |

Defendants Wowza Media Systems, LLC and Coffee Cup Partners, Inc. ("Wowza") move to dismiss Count I and Count II of Plaintiff Adobe Systems Incorporated's action for patent infringement. Wowza argues that these counts: represent an attempt to re-litigate decisions made by this Court in another patent infringement action between the same parties, 11-cv-2243-JST ("Wowza I"); constitute an impermissible collateral attack on a court order; are barred by the prohibition on claim splitting; and violate the Kessler doctrine. Adobe responds that the Court's order in Wowza I merely sought to limit the scope of that litigation, but did not bar Adobe from bringing other infringement actions against Wowza for conduct not covered by Wowza I.

For the reasons set forth below, the Court agrees with Adobe, and will deny Defendants' motion.

## I.   BACKGROUND

This is the second action in which Adobe is suing Wowza for infringement of U.S. Patent Nos. 8,051,287 ("the '287 patent") and 7,961,878 ("the '878 patent") ("the patents at issue"). Wowza I, filed on May 6, 2011, concerns four patents – including the two patents at issue – that Adobe alleges Wowza infringes through the use and sale of Wowza Media Server ("WMS"). On March 15, 2012, Adobe served its final infringement contentions on Wowza related to that

litigation. Like many software companies, Wowza releases its products in "versions." On April 10, 2012, Wowza released version 3.1 of WMS.

Following the close of discovery in Wowza I, Adobe submitted an expert report prepared by Peter Alexander ("the Alexander report"). Wowza moved to strike the report, alleging that it contained discussion of infringement theories that had not been disclosed in Adobe's infringement contentions, including a theory "that WMS infringes the ''878 and '287 patents when performing the RTMP Enhanced handshake in connection with h.264 streaming." Wowza I, ECF No. 442 at 24. The Court agreed that the RTMP Enhanced handshake theory was not disclosed in the infringement contentions and struck that theory from the Alexander report. The Court also concluded that, based on the terms of the infringement contentions, it could adjudicate the parties' disputes concerning "WMS version 3.0 and any of its 'dot versions,'" id. at 31, because "Adobe's infringement contentions specifically accuse WMS version 3.0. 'and any "dot" versions thereof' of infringing all of the patents-in-suit." Id. The Court noted that Adobe's infringement contentions did not reach "versions such as 3.1 and its dot versions, 3.2 and its dot versions, etc." Id. at n.10.

Adobe filed its complaint in the instant litigation ("Wowza II") on June 6, 2014. Counts I and II of the Wowza II complaint allege that Wowza "has been and now is infringing" the '287 and '878 patents through the "manufacturing, using, selling, offering to sell and/or importing the Wowza Media Server (now called Wowza Streaming Engine) version 3.1.0 and greater with unauthorized versions of an enhanced RTMP that uses features of the RTMPe handshake." ECF No. 1 at 10, 12.

## II. LEGAL STANDARD

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation

marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. When dismissing a complaint, the court must grant leave to amend unless it is clear that the complaint's deficiencies cannot be cured by amendment. Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995). The district court, however, has "broad" discretion to deny leave to amend "where plaintiff has previously amended the complaint." Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989).

### III.   DISCUSSION

#### A.   Collateral Attack

Wowza first claims that Counts I and II of Adobe's complaint seek to circumvent this Court's order striking the RTMP Enhanced theory of infringement from an expert report submitted in Wowza I. See Wowza I, ECF No. 442 at 26-27. In that order, the Court concluded that the RTMP Enhanced theory of infringement was "not disclosed in the infringement contentions" submitted by Adobe and therefore could not be introduced into the Wowza I litigation. Id. Adobe argued that the RTMP Enhanced theory was equivalent to the RTMPe theory of infringement, which had been disclosed in the infringement contentions. The Court found that claim of equivalence to be "insufficient" at that stage of the litigation, in light of the patent local rules' intention that parties should use the infringement contentions to "establish the universe of infringement theories that will be litigated in any given case." Id. Wowza claims that allowing Adobe to bring Counts I and II of the instant litigation would effectively reverse that order by allowing Adobe to assert "that Wowza's support of the RTMP Enhanced functionality infringed the '878 and '287 patents." Wowza II, ECF No. 24.

Wowza attempts to analogize this situation to this Court's order in Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc., 13-cv-3677-JST (N.D. Cal. Oct. 22, 2013) ("Icon II"), which dismissed a second lawsuit by a patentee that sought to assert claims against bicycle products the Court had precluded from an earlier lawsuit between the same parties, Case No. 12-cv-3844-JST ("Icon I"). In Icon I, Icon had sought to add 49 models to its infringement lawsuit nearly a year after the filing of its complaint. The Court barred the additional products from being added, finding that Icon "had had information about the 49 models prior to the deadline for

serving its infringement contentions and that it could have discovered additional information about the products by investigating Specialized's website." Id. Although the order in Icon I was silent "on the question of whether Icon would be permitted to accuse the models at issue in a subsequent action," the Court concluded in Icon II that allowing a separate lawsuit to proceed would ultimately result in consolidation of the two actions, undermining the Court's earlier order excluding the products at issue. Id.

Wowza argues that allowing Counts I and II of the instant action to proceed would similarly undermine the Court's order striking these theories from Wowza I. But unlike in Icon I, the Court's order in Wowza I never found that Adobe had notice of Wowza's alleged infringement of RTMP Enhanced at the time the infringement contentions were served in that litigation. The Court's order striking that portion of the expert report reasoned that the RTMP Enhanced theory had to be excluded from Wowza I because the infringement contentions should have "establish[ed] the universe of infringement theories" that would be litigated in the case. Id. at 27. The Court declined to require Wowza to demonstrate that the new theory would cause it prejudice, as prejudice was "inherent in the assertion of a new theory after discovery has closed." Id. at n. 7. Because Wowza II is a separate case, governed by its own infringement contentions and discovery schedule, the Court's reasons for excluding RTMP Enhanced from being litigated in Wowza I do not carry force as reasons for excluding Adobe from ever bringing a claim based on the RTMP Enhanced theory.

Moreover, Adobe's complaint in the current litigation limits the RTMP Enhanced theory regarding the patents at issue to only WMS versions "3.1.0 and greater." These versions of WMS were all released after the submission of the infringement contentions in Wowza I. Based on Adobe's infringement contentions, the Court limited Wowza I to only "WMS version 3.0 and any of its 'dot versions,'" which does not include versions 3.1 and greater. Wowza I at 31. Because the infringement contentions in Wowza I defined the universe of that litigation, barring Adobe from bringing a subsequent litigation alleging claims for infringement occurring after the infringement contentions in Wowza I would in effect punish them for failing to see into the future when they submitted the infringement contentions in Wowza I.

4

1  Although this Court's order in Wowza I – like the order in Icon I – was silent on the
2  question of whether Adobe would be permitted to bring the stricken claim in subsequent litigation,
3  here the equities weigh very differently. In Icon, the plaintiff moved to add products that already
4  existed at the time of its infringement contentions, but here it would have been impossible for
5  Adobe to allege that WMS versions 3.1.0 and greater infringed its patents, because those products
6  did not yet exist. Adobe's attempt to assert the RTMP Enhanced theory against WMS versions
7  3.1.0 or greater is not barred as a collateral attack on the Court's order striking the RTMP
8  Enhanced theory from Wowza I.

## B.  Claim Splitting

Wowza next argues that Adobe's Counts I and II are barred by the prohibition on claim splitting, which is a sub-species of the doctrine of claim preclusion. Claim preclusion bars a second action where "(1) the same parties, or their privies, were involved in the prior litigation, (2) the prior litigation involved the same claim or cause of action as the later suit, and (3) the prior litigation was terminated by a final judgment on the merits." Cent. Delta Water Agency v. United States, 306 F.3d 938, 952 (9th Cir. 2002).[1] The rule preventing claim splitting is designed to "protect the defendant from being harassed by repetitive actions based on the same claim." Clements v. Airport Authority of Washoe Cnty., 69 F.3d 321 (9th Cir. 1995) (internal quotations and citation omitted).

The first element of claim preclusion is indisputably satisfied, as both suits are brought by Adobe against Wowza. The third element is also satisfied as, in the context of the claim splitting analysis, courts will "*assume* that the first suit was final, and then determine if the second suit could be precluded," even if the first litigation remains pending. Single Chip Sys. Corp. v. Intermec IP Corp., 495 F. Supp. 2d 1052, 1058-59 (S.D. Cal. 2007) (collecting cases).

Only the second element is in dispute. In the context of patent infringement, that element is satisfied when "the accused device in the action before the court is 'essentially the same' as the

---

[1] The law of the Ninth Circuit applies to issues that do not have special application to patent cases, such as those pertaining to general preclusion principles. See Acumed LLC v. Stryker Corp., 525 F.3d 1319, 1323 (Fed. Cir. 2008) ("To the extent that a case turns on general principles of claim preclusion, as opposed to a rule of law having special application to patent cases, this court applies the law of the regional circuit in which the district court sits-here the Ninth Circuit.").

accused device in a prior action between the parties that was resolved by a judgment on the merits."[2] Acumed LLC v. Stryker Corp., 525 F.3d 1319, 1324 (Fed. Cir. 2008) (citation omitted). "Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" Id. (citations omitted). "[T]he party asserting claim preclusion has the burden of showing that the accused devices are essentially the same." Id. (citation omitted).

Adobe again draws the Court's attention to its order in Icon II and attempts to cast this situation as a mirror image of the claims the Court prohibited there as "essentially the same" as the claims raised in the prior litigation. In Icon II, the Court held Icon to statements it had made in the course of Icon I alleging that the new models it had sought to accuse were "very similar, if not identical, to the accused saddles [it] included in its initial Infringement Contentions." Icon II, ECF No. 24 at 2. The Court concluded that it had "discretion to treat Icon's factual statements as binding admissions, even if such statements were made in the briefs," finding that "no genuine dispute exists with respect to whether the models at issue meet the 'essentially the same standard.'" Id. at 6.

Again, however, Icon is distinguishable. In Icon I, the Court concluded that Icon had not been diligent in seeking to amend its infringement contentions, as it had been on notice of the additional models from the beginning of the litigation. Icon's claim in Icon I that the new models were "essentially the same" was an attempt to shoehorn the additional claims into the litigation and circumvent its own lack of diligence in failing to allege those models in the initial infringement contentions. Because of Icon's lack of diligence, the Court in Icon II found that Icon would not be prejudiced by the application of claim preclusion, as "Icon had an opportunity to investigate and accuse the models at issue in Icon I, but it chose not to do so in a timely manner." Id. Therefore, the Court found that it was appropriate to hold Icon to its representation from Icon I that the additional models were "essentially the same."

---

[2] This issue is governed by Federal Circuit law. Acumed, 525 F.3d at 1323 ("Whether two claims for patent infringement are identical is a claim preclusion issue that is 'particular to patent law,' and therefore we analyze it under Federal Circuit law.") (citation omitted).

In <u>Wowza I</u>, the Court expressly declined to accept Adobe's claim that the RTMP Enhanced theory was "essentially the same," noting that Adobe had made that assertion "without pointing to any evidence." <u>Wowza I</u>, ECF No. 442 at 27. The Court based its order striking the RTMP Enhanced theory on the fact the theory was not disclosed in the infringement contentions of March 2012. Again, the infringement contentions in <u>Wowza I</u> predated the release of the WMS models at issue in the current litigation. Therefore, to the extent that Adobe asserted the RTMP Enhanced theory against versions of WMS 3.1.0 and greater in <u>Wowza I</u>, Adobe was not attempting to circumvent its own lack of diligence in failing to allege the conduct in the infringement contentions.[3] Rather, Adobe was attempting to add to the litigation claims that had accrued following the submissions of the infringement contentions.

Under principles of claim preclusion, Adobe was not required to introduce allegedly-infringing products that Wowza made or sold during the pendency of <u>Wowza I</u> in order to avoid claim preclusion. Federal Circuit law holds that "res judicata does not bar the assertion of new rights acquired during the action which might have been, but were not litigated." <u>Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.</u>, 672 F.3d 1335, 1345 (Fed. Cir. 2012) (internal quotations and citations omitted).[4] Wowza notes that Adobe attempted to litigate RTMP Enhanced during Wowza I and undertook discovery regarding WMS versions 3.1.0 and greater. The Court, however, has cabined the scope of <u>Wowza I</u>, expressly excluding WMS versions 3.1.0 and greater and striking the RTMP Enhanced theory. Although those products were "made or sold during the pendency" of <u>Wowza I</u>, the Court declines to find they were "litigated," as the Court's own order barred Adobe from introducing those claims in that litigation.

Because Adobe was not required to introduce products released during the pendency of <u>Wowza I</u> into that litigation in order to preserve those claims, Adobe would be prejudiced if the Court were to hold them to their earlier representation that the theories were "essentially the

---

[3] Pursuant to Adobe's complaint, only WMS versions 3.1.0 and greater are at issue in Counts I and II of the instant litigation.

[4] Because the question of whether infringement claims that arise during the pendency of litigation are precluded from being raised in subsequent litigation is an issue particular to patent cases, Federal Circuit law governs. <u>Acumed</u>, 525 F.3d at 1323

7

1 same." Therefore, the Court declines to find that the RTMP Enhanced theory asserted against
2 products released after the filing of the infringement contentions in Wowza I is "essentially the
3 same" as the RTMPe theory asserted in Wowza I. The RTMP Enhanced theory is not barred by
4 the doctrine of claim splitting.

**C.  Kessler Doctrine**

Finally, Wowza argues that allowing Adobe to bring Counts I and II would violate the Kessler doctrine, which enables "an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." Brain Life, LLC v. Elekta, Inc., 746 F.3d 1045, 1056 (Fed. Cir. 2014) (emphasis in original). The Kessler doctrine originated in the Supreme Court's decision in Kessler v. Eldred, 206 U.S. 285 (1907). Eldred held a patent for an electric lamp lighter and brought a claim of infringement against Kessler, a manufacturer and retailer of electric cigar lighters. Id. at 285. The district court found that Kessler's device did not infringe and the decision was affirmed on appeal. Id. at 286. Six years later, Eldred brought suit against a user of Kessler lighters that "were identical with those held in Eldred v. Kessler" to be non-infringing. Id. The Supreme Court dismissed the second suit, holding that the final decision in the first suit against Kessler had "settled finally and everywhere . . . that Kessler has the right to manufacture, use, and sell" the product in question. Id. at 288.

Earlier this year, the Federal Circuit affirmed the continuing viability of the Kessler doctrine in Brain Life, holding that the doctrine "precludes some claims that are not otherwise barred by claim or issue preclusion." Brain Life, 746 F.3d at 1055-1056. The Federal Circuit noted that it was a fundamental principle of patent law that "[w]hen an alleged infringer prevails in demonstrating non-infringement, the specific accused device(s) acquires the 'status' of a non-infringing device vis-à-vis the asserted patent claims." Id. at 1057. The Kessler doctrine extended that principle to devices that are "essentially the same" as those found non-infringing, which under the doctrine are shielded from accusations of infringement in subsequent litigation.

The Kessler doctrine does not prohibit Adobe's claims at this stage, because Wowza's technology has never been held to be non-infringing by a final court judgment. Although Wowza

argues that "the Court should presume a final judgment has been reached in Wowza I" for the purposes of the Kessler analysis, it provides no convincing argument for why the Court should do so. ECF No. 24 at 9. Because the Kessler doctrine is animated by the concern that an adjudged non-infringer should not be made to re-establish non-infringement in subsequent litigation, it would not make sense to apply the doctrine in favor of Wowza, who is not, as of the date of this order, an adjudged non-infringer.

### D.     Dismissal as to Coffee Cup Partners

Finally, Wowza asks the Court to dismiss Adobe's claims against Coffee Cup Partners, Inc., the successor to Wowza. Wowza claims that Coffee Cup transferred all of its assets to Wowza on March 27, 2012 and was a non-operating entity when all of the claims in the instant litigation arose. The Court agrees with Adobe that the issue of Coffee Cup's involvement in the allegedly infringing conduct at issue cannot be resolved based solely on Defendants' assertion in a motion to dismiss.

## IV.    Conclusion

Adobe's motion to dismiss Counts I and II of the complaint is DENIED.

**IT IS SO ORDERED.**

Dated: October 27, 2014

_____
JON S. TIGAR
United States District Judge